**Norma MOONEY, Plaintiff-Appellee,**

v.

**STAINLESS, INC., and Stainless Construction Company, Defendants-Appellants.**

**No. 15433.**

United States Court of Appeals
Sixth Circuit.

July 13, 1964.

Rehearing Denied Nov. 12, 1964.

J. W. Baker, Knoxville, Tenn., Arthur D. Byrne, Knoxville, Tenn., on brief; Poore, Cox, Baker & McAuley, Knoxville, Tenn., of counsel, for appellants.

Joseph W. Rogers, Knoxville, Tenn., Thearon F. Chandler, Knoxville, Tenn., on brief; N. E. Hutson, Monticello, Ill., of counsel, for appellee.

Before MILLER, CECIL and PHILLIPS, Circuit Judges.

HARRY PHILLIPS, Circuit Judge.

Defendants[1] have appealed from a $50,000 judgment based upon a jury verdict awarded to plaintiff for the wrongful death of her husband, Harold W. Mooney, at Oak Ridge, Tennessee, on March 10, 1961, where he was engaged in the erection of a tower. Jurisdiction is based upon diversity of citizenship.

The Atomic Energy Commission engaged the H. K. Ferguson Company, one of the prime contractors for the Commission at Oak Ridge, to furnish and erect at Oak Ridge three 150-foot steel towers for use in connection with some of the Commission's activities. Ferguson prepared the tower bases and solicited bids from others, including Stainless, Inc., for the fabrication and erection of the towers.

Defendants are Pennsylvania corporations, and have never domesticated to do business in Tennessee. Stainless, Inc., confined its activities to the design and fabrication of towers, and the details of any work in the field were handled by Stainless Construction Company, which was operated as a division of Stainless, Inc. and shared the same offices. By agreement of the parties the two corporations have been treated as one defendant for the purposes of this litigation.

Stainless, Inc. initially submitted a bid to Ferguson in the amount of $4,500 for only the fabrication of the towers. Ferguson then requested a bid for both fabrication and erection. Stainless Construction Company thereupon obtained oral bids for the erection work from two tower erectors. William Wood, doing business as Central Illinois Tower Maintenance Company, a sole proprietorship, of Monticello, Illinois, proposed to do the erection work for $3,000, which was $1,575 lower than that of the other bidder. Stainless then submitted a bid of $9,430 to Ferguson for fabrication and erection. Ferguson accepted the bid and subcontracted the fabrication and erection of the towers to Stainless. Stainless fabricated the towers and en-

---

1. The parties will be referred to in this opinion as they appeared in the District Court. Defendants sometimes will be referred to as "Stainless." The H. K. Ferguson Company will be referred to as "Ferguson."

gaged Wood to erect them for the amount of his bid.

Mooney, husband of plaintiff, was an employee of Wood and a resident of Illinois. Erection of two of the towers was completed without incident. Mooney was fatally injured during the erection of the top section of the third tower. At the time of the fatal accident Wood was operating a truck to which a block and tackle arrangement was attached so that the forward motion of the truck would hoist the section. Wood drove the truck forward, lifting the section into place, and Mooney climbed up the tower and secured the section with bolts. When Wood sought to back the truck so as to slacken the hoisting line and permit it to be disengaged, he allowed the truck to move forward, with the result that the line tightened and caused the top section of the tower to fall to the ground with Mooney, killing him instantly.

Wood had complied with the Illinois Workmen's Compensation law with respect to Mooney, and plaintiff has been receiving compensation benefits under this law.

Plaintiff filed this suit for damages against Stainless on two alternative theories: (1) that Wood was an employee of Stainless, and Stainless was chargeable with Wood's negligence under the doctrine of *respondeat superior;* and (2) that if Wood was an independent contractor, he was incompetent to erect towers and Stainless knew or should have known of his incompetence when it engaged him, and Stainless therefore was guilty of independent negligence. The District Judge submitted the case on both theories to the jury, which returned a general verdict for the plaintiff.

With respect to the first theory, Stainless contends that plaintiff is barred from recovering common law damages because she received workmen's compensation in Illinois. The Illinois statute provides that acceptance of compensation will bar a suit for damages against the employer. Ill.Rev.Stat. ch. 48, § 138.-5(a). Under plaintiff's first theory it

is contended that Stainless was the employer of Wood, and the negligence of Wood was imputed to Stainless as his employer. The plaintiff contends that under Carroll v. Lanza, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183, Tennessee need not give full faith and credit to the Illinois statute if it conflicts with Tennessee's own law and policy.

■ However much we may agree with this interpretation of Carroll v. Lanza, plaintiff's argument overlooks the fact that in the instant case there is no conflict between the policy of Illinois and Tennessee law in this respect. Both states provide that if an employee accepts workmen's compensation, this will be the exclusive remedy against the employer. Ill.Rev.Stat. ch. 48, § 138.5(a); T.C.A. § 50–908. At the same time, both states provide that receiving compensation will not bar common law suits for damages against third parties. Ill.Rev. Stat. ch. 48, § 138.5(b); T.C.A. § 50–914. If Stainless was the employer of Wood, it follows that Stainless was not a "third party" within the meaning of either the Illinois statute or the Tennessee statute. Thus there is no problem of conflicts of law in this case and Carroll v. Lanza has no bearing on this issue. Tennessee, the forum state, would apply her own law. As said by Justice Frankfurter: "Conflict-of-law problems have a beguiling tendency to be made even more complicated than they are." Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 169, 67 S.Ct. 237, 243, 91 L.Ed. 162 (concurring opinion).

■ Tennessee, of course, would recognize the fact of recovery of compensation in Illinois. Tidwell v. Chattanooga Boiler & Tank Co., 163 Tenn. 420, 43 S.W.2d 221. As already pointed out, under Tennessee law the recovery of compensation is the exclusive remedy against the employer. From this it would seem to follow that plaintiff is precluded from suing on her first theory, because if Stainless was in legal effect an employer of Wood and therefore of the decedent, then plaintiff's recovery of workmen's commpensation

bars a common law suit for damages against the employer. Such a conclusion, in our opinion, gives effect to the law and policy of Tennessee. Therefore it was error to submit to the jury the theory that Stainless may have been liable as an employer of Wood under the doctrine of *respondeat superior*. cf. Adams v. Hercules Powder Co., 180 Tenn. 340, 175 S.W.2d 319, 151 A.L.R. 1352.

Under her second theory, plaintiff contended that Wood was an independent contractor. In such a case, Stainless would not be an employer but was a third party and, under Tennessee law, could be liable for common law damages. Bowaters Southern Paper Corp. v. Brown, 253 F.2d 631 (C.A. 6); Mahoney v. United States, 216 F.Supp. 523 (E.D.Tenn.)

Specifically, plaintiff alleged that Stainless was guilty of independent negligence in engaging an incompetent contractor. This is one of the many exceptions carved·out of the general rule that an employer will not be liable for acts of an independent contractor. This exception has been recognized in Tennessee. Jolly Motor Livery Corp. v. Allenberg, 188 Tenn. 452, 221 S.W.2d 513; Cash v. Casey-Hedges Co., 139 Tenn. 179, 201 S.W. 347; Powell v. Virginia Construction Co., 88 Tenn. 692, 13 S.W. 691. We do not find any Tennessee case, however, where a prime contractor has been held liable for independent negligence in engaging a subcontractor.

It is clear that Stainless cannot be held liable for independent negligence in engaging Wood as independent contractor upon the theory of Wood's incompetence unless it is established that Stainless either knew, or by the exercise of reasonable care might have ascertained, that Wood was not properly qualified to undertake the work. 27 Am.Jur. (Independent Contractors) 507. The fact that Wood subsequently was guilty of a negligent act causing the death of plaintiff's husband raises no presumption that Stainless was negligent in selecting him as a contractor. Matanuska Electric Association, Inc. v. Johnson, 386 P. 2d 698 (Alaska); Strickland v. State, 13 Misc.2d 425, 177 N.Y.S.2d 983; Eger v. Helmar, 272 Mich. 513, 262 N.W. 298; Silveus v. Grossman, 307 Pa. 272, 161 A. 362; 27 Am.Jur. (Independent Contractors) 509.

The District Judge charged the jury that the burden was on plaintiff to prove that the defendant was guilty of negligence in engaging an incompetent contractor and that such negligence was the proximate cause of the accident and the resulting death. This fixing of the burden of proof would seem to be proper under the general rules of negligence. There is, however, some authority for the view that the employer has the burden of proving that he exercised due care in selecting a contractor, thus casting this as an affirmative defense. Annot., 8 A.L.R.2d 267, 269. Tennessee does not seem to have had occasion to pass on this question, but, absent any indication to the contrary, we hold that the District Judge correctly followed Tennessee's general rule that, in negligence cases, the burden is on the plaintiff to show a breach of a duty. Union Ry. Co. v. Williams, 187 F.2d 489 (C. A. 6) cert. den. 342 U.S. 839, 72 S.Ct. 65, 96 L.Ed. 634; Memphis St. Ry. Co. v. Cavell, 135 Tenn. 462, 187 S.W. 179; Chattanooga-Dayton Bus Line v. Lynch, 6 Tenn.App. 470.

In attempting to carry her burden, plaintiff introduced evidence to the effect that Wood's principal previous experience had been as a mere employee and crew chief in the erection and maintenance of towers; that his bid for the contract was substantially lower than that of the other bidder; that his equipment was not as comprehensive as it might have been; and that he was engaged by long distance telephone. Plaintiff also relies upon Wood's own testimony to the effect that he knew only "vaguely" what the work required. This, plaintiff contends, was sufficient evidence of Wood's incompetence for submission of the case to the jury.

On the other hand, there was testimony that the spread between the bid of Wood and that of the other bidder was not so unusual in this business. While it is true that Wood previously had been an ironworker and crew chief in the erection and maintenance of towers, it is uncontradicted in this case that he had begun his own company as a sole proprietorship three years prior to the contract with Stainless. It was not shown what kind of contracts Wood had performed during these three years other than his own testimony that "I specialize in tower erection and maintenance." Neither was it shown that Wood had ever before, either as employee or as contractor, been involved in an accident. There is no showing of anything about the previous history of Wood that would have put Stainless on notice of any incompetence or unfitness on his part, no matter how complete an investigation might have been made by Stainless in advance of engaging him. Though there is an intimation that Wood's equipment was not as extensive as might have been desirable, no evidence was offered by plaintiff as to what extent he was ill-equipped or under-equipped, or as to what minimum equipment is required in the performance of this type of contract.

In light of the above, we are of the opinion that plaintiff failed to carry her burden of proof, and there was not sufficient evidence of Wood's alleged incompetence to submit to the jury the question of whether Stainless was negligent in selecting him. For cases which reached this result, although on distinguishable facts, see, e. g. Majestic Realty Associates v. Toti Contracting Co., 54 N.J.Super. 419, 149 A.2d 288, aff'd, 30 N.J. 425, 153 A.2d 321; Moore v. Roberts, 93 S.W.2d 236 (Tex.Civ.App.).

Furthermore, we are not at all certain that Stainless could have been held liable in this case even if it had been shown that Wood was incompetent. Section 411 of the Restatement of Torts pertains to negligence in the selection of an independent contractor; comment b, under that section, reads as follows:

"The employer of a negligently selected contractor is subject to liability under the rule stated in this Section for bodily harm caused by his failure to exercise reasonable care to select a competent contractor, but only for such bodily harm as is so caused. In order that the employer may be subject to liability it is, therefore, necessary that harm shall result from some quality in the contractor which made it negligent for the employer to entrust the work to him. Thus, if the incompetence of the contractor consists in his lack of skill and experience or of adequate equipment but not in any lack of attention or diligence in applying such experience and skill or using such equipment as he possesses, the employer is subject to liability for any harm caused by the contractor's lack of skill, experience or equipment but not for any harm caused solely by the contractor's inattention or negligence."

In the instant case, plaintiff attempted to prove Wood's incompetence by reason of his alleged lack of equipment and lack of experience as a contractor. Two of the three towers had been erected and completed in a satisfactory manner. The accident occurred during the erection of the third tower when Wood moved the truck forward instead of backward. The death of plaintiff's husband would seem to have been caused by lack of attention or diligence on the part of Wood in operating the truck, and in permitting it to move forward, rather than by lack of experience as a contractor or by insufficient equipment.[2] Thus, under the ra-

---

2. The complaint describes the accident as follows:

"Plaintiff avers that this tower was caused to fall when the defendants used a pick-up truck to hoist the top section of said tower into position. After said section was in place, the pick-up truck was carelessly, recklessly and

tionale of the foregoing quotation from Restatement, Stainless would not have been liable for this particular accident under plaintiff's second theory.

In any event, we are of the opinion that the District Court erred in submitting to the jury the plaintiff's theory that Stainless was guilty of negligence in engaging an incompetent contractor and that there is no evidence to support the verdict on this theory. Earlier in this opinion, we have held that plaintiff's acceptance of workmen's compensation benefits barred her recovery of damages on the theory that Stainless was the employer of Wood.

In view of this disposition of the case, it is not necessary to pass upon the other issues presented on this appeal.

The judgment of the District Court is reversed, and the case remanded with instructions to dismiss the complaint.

### On Petition to Rehear

Plaintiff, Mrs. Mooney, has filed a petition to rehear, asserting that the opinion of this court is erroneous and should be reconsidered upon the following grounds:

(A) That neither Wood nor defendants made filings of certificates of workmen's compensation with the State of Tennessee, and therefore plaintiff could maintain a suit for wrongful death under the provisions of T.C.A. §§ 50–1205 and 50–1206, against defendants as employers who rejected the Act.

(B) That plaintiff received workmen's compensation benefits under the Illinois Workmen's Compensation Act in the form of voluntary payments, and not as a result of an award, and that, since she received these benefits without initiating an action under the Illinois statute and prosecuting it to final judgment, she is not precluded from maintaining this suit

---

wrongfully operated in a grossly negligent manner by William Wood * * *, when he negligently moved said truck forward putting a sudden surge on the hoisting line, causing the rigging to create a two block condition at the top of the tower, resulting in a downward force and pull, causing the tower to break about 80 feet from the ground, which precipitated plaintiff's husband to the ground and killed him."

A committee of the Atomic Energy Commission which investigated the accident reported in part as follows:

"After the top section had been landed and bolted in place by Mooney and Shuler, the truck operator (Wood) attempted to back the towing truck up a hill on the access road in order to provide slack in the hoisting line so it could be disengaged from the truck. Because of the steep grade and the loose crushed stone surface of the road, the wheels of the truck spun, and the motor died, during the backing process. The motor was restarted and another effort was made to back up the truck, but it skidded and moved forward putting a sudden surge on the hoisting line. When this sudden force was applied, it resulted in a two block condition at the top of the tower causing an excess downward force and a direct lateral pull at the 4' point on the tower where the snatch block was attached. The horizontal (approximately 4') movement of the tower at this point caused a whipping action in the upper portions of the tower and resulted in partial failure just above the guy wires at the 40' level and complete fracture at the 80' level. The top 70' of the tower broke off just above the guy wires at the 80' level and fell to the ground carrying Shuler with it. He received serious injuries. Mooney was catapulted off the tower by the whip action of the top sections and was instantly killed when he fell to the ground."

An eye-witness described the accident in the following language:

"So he started backing up through these loose gravels. He backed up a few feet and went ahead just a little bit, then he backed up and he must have come back about eight or ten feet the second time, then he started ahead. Therefore, I don't know just what happened, but he just kept going and that tightened up the bull line to the steel again and the tower began to sway. * * *

"Whether his foot slipped off the brake, or whether he hit the foot feed there which caused him to keep going, I couldn't say."

for wrongful death against Stainless upon the theory that the relationship of employer-employee existed between Stainless and Wood and that Stainless was liable for Wood's negligence under the doctrine of *respondeat superior.*

(C) That there was sufficient evidence in the record upon which the jury could have returned a verdict for plaintiff on her second theory; that is, if Wood was an independent contractor, he was incompetent to erect towers, that Stainless knew or should have known of his incompetence when it engaged him, and Stainless therefore was guilty of independent negligence.

All three of these arguments were considered by the court in disposing of the appeal, and the third contention was discussed in some detail in our opinion. The first two contentions were not considered to be of sufficient merit to require discussion. Because of the earnestness with which plaintiff reasserts these arguments in an able petition to rehear, we now proceed to set forth our reasons for considering them to be without merit.

■ (A) Wood was not required to file certificates of workmen's compensation with the State of Tennessee unless he was "using the services of not less than five (5) persons for pay." T.C.A. § 50-902. The burden of proof is upon the employee to establish that the employer "had the requisite number of employees to bring it within the application of the compensation statute." King v. Buckeye Cotton Oil Co., 155 Tenn. 491, 504, 296 S.W. 3, 7, 53 A.L.R. 1086.

■ The record shows that Wood brought only two employees from Illinois to Tennessee to work in erecting the towers in question, one of whom was Mooney, husband of plaintiff. He had complied with the workmen's compensation law of Illinois as to these two employees at all times material. He did not expect to have any other employees on this job. Thereafter, under pressure from a local labor union at Oak Ridge, and in order to avoid labor difficulties, Wood put two local union members on the job, one of whom was added to his payroll approximately one hour before the accident. Thus the record shows that Wood did not at any time have more than four employees in Tennessee. Plaintiff contends that Wood's wife, who kept his payroll records in Illinois, should also be treated as an employee, and that Wood therefore had the minimum of five employees prescribed by the Tennessee statute. There is no showing that the wife was paid for her bookkeeping services or that she was an employee of Wood within the contemplation of the Tennessee statute. We hold that, under the facts, Wood was not required to qualify under the Tennessee Workmen's Compensation Law.

In the alternative, it is urged that Stainless had five or more employees in Tennessee and, having failed to make filings of certificates of workmen's compensation under the Tennessee statute, it rejected the Act and was subject to be sued for the death of Mooney resulting from the negligence of Wood imputed to Stainless as his employer.

If plaintiff is to support her position that Stainless had five employees in Tennessee, it must be established that Stainless is to be treated as the employer of Wood's four employees and also that Wood was the employee of Stainless and not an independent contractor.

■ As to the status of Wood, the record shows that he was in the tower erection business and had his own employees, tools and equipment; that Wood bid against another tower erector to get the contract for the erection of the three towers at Oak Ridge; that the bid was for a lump sum and covered the complete erection job by the end of a stated period, with Wood to furnish all labor, tools and equipment necessary therefor; that although the job was to be performed in accordance with plans and specifications furnished by Stainless, and Stainless reserved the right to inspect the work as it progressed to see that it was

being done in accordance with the plans and specifications, it was left up to Wood to determine the method or methods which would be followed by him in doing the job; that Wood used his own employees, tools and equipment in performing the work; that he paid his employees and withheld income taxes and Social Security taxes from them; and that Stainless did not at any time seek to control Wood as to the details of the work, but rather looked to him only for the end result. These facts do not establish that the relationship of employer-employee existed between Stainless and Wood. Odom v. Sanford & Treadway, 156 Tenn. 202, 207, 299 S.W. 1045, 1046; Bowaters Southern Paper Co. v. Brown, 253 F.2d 631 (C.A. 6); Restatement, Law of Agency, § 220(2).

The trial judge submitted to the jury both theories of plaintiff, giving a thorough charge concerning Tennessee law as to the distinction between an employee and an independent contractor. There was no affirmative finding by the jury that Wood was an employee of Stainless, the jury having returned a general verdict.[3]

We therefore hold that plaintiff has not established that either Wood or Stainless had as. many as five employees in Tennessee. It follows that neither of them was required to qualify under the Tennessee Workmen's Compensation Law. Therefore T.C.A. §§ 50–1205 and 50–1206, relied upon by plaintiff, have no application.

(B) On the issue of the "voluntariness" of the workmen's compensation payments received by plaintiff under the Illinois Workmen's Compensation Law, the parties entered into the following pre-trial conference stipulation:

"That Wood had complied with the Workmen's Compensation Law of the State of Illinois as to Mooney at all times material and that the plaintiff, as Mooney's widow, was at the time this suit was instituted, and is now, receiving Workmen's Compensation benefits of $92.00 every two weeks by reason of said compliance. (The plaintiff contends that she has not made claim to these benefits and that the payments are being made to her voluntarily by Wood's Workmen's Compensation insurance carrier. The defendants are not advised as to this contention of the plaintiff and hence make no stipulation with reference thereto.)"

■ While plaintiff testified that she did not make any claim for workmen's compensation, the record is not specific as to how these benefits came to be paid. Assuming that the payments were made to plaintiff by Wood's workmen's compensation carrier, without requiring plaintiff to institute an action and obtain an award therefor, we find no Tennessee decision holding that the "voluntariness" of payments of workmen's compensation accepted by a widow of a deceased employee authorizes the widow to accept and collect workmen's compensation and at the same time maintain a suit against the employer for wrongful death. Such an interpretation would discourage voluntary payments to employees and their surviving dependents, and impose upon the beneficiaries of the Workmen's Compensation Act the burden of insti-

---

3. During the deliberations of the jury, it returned into open court of its own volition and, when asked by the Court if it had reached a verdict, announced that it had agreed on the "guilt" of Stainless "under number two charge" but was unable to agree on damages. The Court directed the jury to deliberate further, which it did, and after approximately one hour came back into open court, and returned a verdict for plaintiff in the sum of $50,000. Stainless contends that the "number two charge" was that portion of the charge of the Court setting forth plaintiff's second theory of negligence in engaging an incompetent contractor. While the District Court ruled that, under all the facts and circumstances, the jury returned a general verdict, this verdict by no means establishes that the jury found Wood to be an employee of Stainless.

tuting an action on every claim and pursuing it to final judgment. We do not believe the Tennessee courts would adopt such a distinction between "voluntary" and "involuntary" payments. Barbee v. Baker Car Company, 154 Tenn. 130, 289 S.W. 525. The decisions relied upon by plaintiff do not support her contention that a beneficiary can accept workmen's compensation payments, even though made "voluntarily," and thereafter maintain an action for common law negligence or wrongful death against the employer. Davis v. United States Fidelity & Guaranty Co., 206 Tenn. 683, 337 S.W.2d 240; Hudgins v. Nashville Bridge Co., 172 Tenn. 580, 113 S.W.2d 738; Shipley v. Wellwood Silk Throwing Mills, 164 Tenn. 281, 47 S.W.2d 561.

▆▆▆ (C) Finally plaintiff complains that this court has erred by substituting its opinion for the opinion of the jury as to where the preponderance of the evidence lay under her second theory of the case, "thereby depriving the plaintiff of her constitutional right of trial by jury of the evidentiary facts in this case." In making this contention plaintiff has misunderstood our holding on her second theory. We held that the burden of proof was upon plaintiff to establish that Stainless was negligent in engaging Wood as an independent contractor, rather than upon .Stainless to establish that it exercised due care in selecting Wood as an independent contractor. We then proceeded to hold not only that plaintiff failed to carry her burden of proof, but that there was no evidence whatsoever which could have supported a verdict of the jury on this theory, and that the District Court therefore erred in submitting plaintiff's second theory to the jury. In order to clarify our holding on this point, the first sentence in the sixth from the last paragraph of our original opinion is revised to read as follows: "In light of the above, we are of the opinion that there was not sufficient evidence of Wood's alleged incompetence to submit to the jury the question of whether Stainless was negligent in selecting him."

All other contentions submitted by plaintiff have been considered by the court and found to be without merit.

The petition for rehearing is denied.