Roger SCHLENK, Plaintiff
and Appellant,

v.

NORTHWESTERN BELL TELEPHONE
COMPANY, INC., Defendant
and Appellee.

and

NORTHWESTERN BELL TELEPHONE
COMPANY, a corporation, Third-Party
Plaintiff and Appellee,

v.

AERIAL CONTRACTORS, INC., Third-
Party Defendant and Appellee.

Civ. No. 10259.

Supreme Court of North Dakota.

Jan. 27, 1983.

---

Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, for appellant Roger Schlenk; argued by Paul F. Richard, Fargo.

Conmy, Feste & Bossart, Ltd., Fargo, for appellee Northwestern Bell Tel. Co., Inc.; argued by Wickham Corwin, Fargo.

Nilles, Hansen, Selbo, Magill & Davies, Ltd. and Pancratz, Yuill, Wold, Johnson & Feder, Fargo, for appellee Aerial Contractors, Inc.; argued by Duane H. Ilvedson, Fargo.

PAULSON, Justice.

Roger Schlenk appeals from a judgment of the District Court of Cass County dated June 14, 1982, which granted Northwestern Bell's motion for summary judgment and dismissed Schlenk's claim. We affirm.

On November 20, 1974, Schlenk was seriously injured when he became entangled in a "wire winder" machine which was being used to roll dismantled telephone wires onto a spool. At the time of his injury, Schlenk was employed by Aerial Contractors, Inc., an independent contractor [1] hired by Northwestern Bell to remove abandoned aboveground telephone lines in the Watford City area.

Aerial Contractors was a contributing employer to the North Dakota Workmen's Compensation Bureau and had secured workmen's compensation coverage for Schlenk. On November 29, 1974, Schlenk

---

1. The parties do not dispute the conclusion that Aerial Contractors served in the capacity of an "independent contractor" during its contractual relationship with Northwestern Bell.

filed a standard compensation and medical expense claim with the North Dakota Workmen's Compensation Bureau. The Bureau accepted his claim, and Schlenk has received various workmen's compensation benefits since the date of his injury.

On May 2, 1977, Schlenk commenced an action against Aerial Contractors, James L. Nesheim, Jean A. Nesheim, and Cameron Geritz, seeking damages for the injuries he suffered on November 20, 1974. His complaint alleged intentional, deliberate, and willful injury; strict liability in tort; breach of warranty; and negligent design and manufacture of the wire winder. Aerial Contractors moved for summary judgment. Summary judgment was entered in the District Court of Cass County on October 27, 1977, dismissing Schlenk's complaint with prejudice. On appeal, in an opinion dated June 28, 1978, this court affirmed the summary judgment against Schlenk.[2]

With a summons and complaint dated August 1, 1980, Schlenk commenced a second lawsuit, naming Northwestern Bell as the defendant, seeking to recover damages for the injuries he suffered on November 20, 1974. Schlenk alleged that Northwestern Bell was liable for his injuries because the nature of the work was inherently dangerous and Bell had: (1) retained control over the project; (2) failed to exercise reasonable care in employing a competent contractor; (3) failed to properly supervise the work; (4) violated statutes and regulations, thereby constituting the creation of a nuisance; and, (5) ratified the unsafe manner of Aerial Contractors' ac-

tions. Subsequently, Bell, as a third-party plaintiff, pursuant to Rule 14(a) of the North Dakota Rules of Civil Procedure, served a third-party summons and complaint upon Aerial Contractors.

On March 18, 1982, Bell filed a motion for summary judgment. A hearing on the motion was held before the District Court of Cass County on March 31, 1982. The district court determined as a matter of law that Schlenk did not fall within the scope of any duties which might have been owed by Bell, and, further, that even if Schlenk did fall within the scope of any such duties, the evidence adduced in the form of depositions and affidavits failed to establish that as a matter of law any duty was owed by Bell to Schlenk. Accordingly, summary judgment was entered on June 14, 1982, dismissing Schlenk's complaint. From this judgment Schlenk appeals.

The bases for Schlenk's contentions for holding Bell liable are premised on §§ 411, 413, 414, 416, 424, and 427 of the Restatement (Second) of Torts (1965). The parties have urged this court to decide whether or not the word "others" as used in these sections[3] includes employees of an independent contractor, so as to allow the cause of action against Bell. We deemed it unnecessary to decide the question in *Peterson v. City of Golden Valley*, 308 N.W.2d 550, 554 (N.D.1981). We again decline to decide the issue because, even if we were to accept Schlenk's contention that employees of an independent contractor fall within the meaning of the term in our State [*see Ol-*

---

**2.** In *Schlenk v. Aerial Contractors, Inc.*, 268 N.W.2d 466 (N.D.1978), this court affirmed the summary judgment of the district court dismissing Schlenk's complaint against Aerial Contractors because the injury to Schlenk was compensable by the North Dakota Workmen's Compensation Act and the Act was Schlenk's exclusive remedy against his employer and fellow employees. This court also held that the Workmen's Compensation Act in effect in 1974 had no provision excluding coverage for willful or intentional injuries inflicted on an employee by his employer or fellow employees, and, further, that even if the Act had provided an exception for willful or intentional injuries inflicted by an employer or fellow employee, Schlenk's claim was still properly dismissed

because: (1) his injury had not resulted from an actual intent to injure; (2) § 65–05–03 of the North Dakota Century Code barred Schlenk from collaterally attacking the decision of the North Dakota Workmen's Compensation Bureau which determined that his injury was compensable under the North Dakota Workmen's Compensation Act; and (3) Schlenk had elected to pursue his workmen's compensation remedy and had accepted workmen's compensation benefits and was therefore barred from bringing an action for willful or intentional infliction of injuries.

**3.** Section 411 of the Restatement refers to "third persons" rather than "others".

*heiser v. Annco, Inc.,* 219 N.W.2d 116 (N.D. 1974); *Boettner v. Twin City Construction Company,* 214 N.W.2d 635 (N.D.1974); §§ 65–01–02(5)(c) and 65–01–08, N.D.C.C.], we agree with the district court that the evidence does not establish that Bell owed a duty to Schlenk under any of the theories posited, and, thus, Schlenk could not prevail as a matter of law.

Our court has recognized the general rule that an employer is not liable for acts or omissions of its independent contractor. *Lumpkin v. Streifel,* 308 N.W.2d 878, 879 (N.D.1981); *Peterson v. City of Golden Valley, supra* 308 N.W.2d at 553; *Fettig v. Whitman,* 285 N.W.2d 517, 521 (N.D.1979); *Foremost Insurance Co. v. Rollohome Corporation,* 221 N.W.2d 722, 727 (N.D.1974); *Newman v. Sears, Roebuck & Co.,* 77 N.D. 466, 43 N.W.2d 411, 414 (1950). *See also* Restatement (Second) of Torts § 409 (1965). It has been stated, however, that the general rule of employer nonliability "is now primarily important as a preamble to the catalog of its exceptions". *Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co.,* 201 Minn. 500, 277 N.W. 226, 228 (1937). We have stated that a determination of the applicability of these exceptions to the general rule of employer nonliability is a question of law which the court must decide before allowing a jury to hear the evidence. *Peterson v. City of Golden Valley, supra.* In that case we stated, *supra* 308 N.W.2d at 553:

"A determination that an exception to the general rule of employer nonliability applies in a given case is tantamount to a determination that the employer in that case has a duty. Whether or not one owes a duty to another in a case such as this is an issue of law which the court must resolve before allowing a jury to hear evidence of negligence and proximate cause."

The trial court, as noted above, determined as a matter of law that none of the exceptions to the general rule relied upon by Schlenk were applicable in the instant case. We will proceed to consider the appropriateness of this determination as to each of the liability theories propounded by Schlenk.

I

## VICARIOUS LIABILITY BASED UPON PECULIAR RISK OR INHERENTLY DANGEROUS WORK

■ Schlenk relies on §§ 416 and 427 of the Restatement (Second) of Torts in arguing that Bell should be found vicariously liable for his injuries because operation of the "wire winder" machine was peculiarly risky and inherently dangerous, and, as such, the employer's duty to Schlenk is not delegable to the independent contractor, *i.e.,* Aerial Contractors. Our court has recognized that an employer can be found vicariously liable for the acts of its independent contractor if the work from which the injury results fits within either § 416 or § 427. *See Peterson v. City of Golden Valley, supra* 308 N.W.2d at 553; *Fettig v. Whitman, supra* 285 N.W.2d at 521–522; *Foremost Insurance Co. v. Rollohome Corporation, supra; Ruehl v. Lidgerwood Rural Telephone Co.,* 23 N.D. 6, 135 N.W. 793 (1912). Sections 416 and 427 of the Restatement (Second) of Torts (1965) provide:

"§ 416. *Work Dangerous in Absence of Special Precautions* One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

"§ 427. *Negligence as to Danger Inherent in the Work* One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

These sections have been most recently interpreted by our court in *Fettig v. Whitman,* 285 N.W.2d 517 (N.D.1979); and *Peterson v. City of Golden Valley,* 308 N.W.2d 550 (N.D.1981). In *Fettig v. Whitman, supra,* the plaintiff was seriously injured when she fell through an open stairwell in a house being constructed for her and her husband. She sued the general contractor asserting that it was vicariously liable for the negligence of the carpenter it employed as a subcontractor to build the house. Affirming the district court's dismissal of the general contractor from the subsequent action, Justice Sand, writing for the court, determined that neither § 416 nor § 427 applied under the facts of the case. Analyzing the "peculiar risk" requirement of § 416 by referring to Comment b under § 413 of the Restatement, we said, in *Fettig, supra* 285 N.W.2d at 522:

> " 'It is obvious that an employer of an independent contractor may always anticipate that if the contractor is in any way negligent toward third persons, some harm to such persons may result.... This Section [413] has no reference to such a general anticipation of the possibility that the contractor may in some way be negligent. It is *not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work.* Such precautions are the responsibility of the contractor ....' " [Emphasis in original.]

The court concluded that the negligence of the subcontractor in not keeping the stairwell opening covered was not a danger which arises from the "very performance of constructing a house but was from the manner in which the construction was done" and, thus, did not fall within the § 416 exception. *Fettig, supra.* We also noted that a contrary holding under the facts of the case "would be tantamount to holding that any 'general anticipation of the possibility that the contractor may in some way be negligent' would result in vicarious liability, directly contrary to the expressed intention of section 416". *Fettig, supra* 285 N.W.2d at 522 [quoting from *Addison v. Eagle Lake Lumber Co.,* 47 Cal.App.3d 394, 120 Cal.Rptr. 737, 741–742 (1975)].

In *Peterson v. City of Golden Valley, supra,* this court further analyzed §§ 416 and 427. In *Peterson, supra,* an employee of an independent contractor performing sewer construction work for the city was killed when the banks of a trench in which he was working caved in. The portion of the trench which collapsed was not braced or flared outward and a protective device which allowed workers to enter the trench without risk of injury from a cave-in was available at the site but was not being used at the time of the accident. The city's motion for summary judgment against the decedent's parents was affirmed on appeal.

Justice Pederson, writing for the court, concluded, in *Peterson,* that in order to meet the "peculiar risk" requirement of § 416, the risk must be " 'likely to arise in the course of the ordinary and usual method of doing the work' ". *Peterson, supra* 308 N.W.2d at 553 [quoting from Restatement (Second) of Torts § 416, Comment e (1965)]. In regard to the "inherent danger" requirement of § 427, the court went on to state, in *Peterson:*

> "An analysis of § 427 yields a like conclusion. According to Comment b under that provision, the danger is sufficient to make the employer liable if it is 'normally to be expected in the ordinary course of the usual or prescribed way of doing [the work] ....' Section 427 'has no application where the negligence of the contractor creates a new risk, not inherent in the work itself or in the ordinary or prescribed way of doing it ....' Comment d, § 427."

*See also Newman v. Sears, Roebuck & Co.,* 77 N.D. 466, 43 N.W.2d 411, 414 (1950).

Phrasing the determinative issue under either § 416 or § 427 as whether or not the activity involved "carries a largely intrinsic risk or danger to workers when done in an ordinary and reasonable manner", the court found that the risk was not inherent in or

peculiar to the typical excavation of a trench but "arises out of the failure to use proper protective practices". *Peterson, supra* 308 N.W.2d at 554. The court therefore concluded that the city had no duty under the inherent danger or peculiar risk exceptions to the nonliability rule.

Thus, it is necessary to determine under *Fettig* and *Peterson, supra,* whether or not operation of the wire winder machine in the instant case carries with it a largely intrinsic risk or danger to workers when used in an ordinary and reasonable manner. Considering the evidence before the trial court, we conclude that it does not.

The "wire winder" machine had been constructed and was owned by Aerial. Its operation was controlled by two separate levers which determined the speed at which the spool turned and the direction of the turn. It was Aerial Contractors' "prescribed company policy" to have two workers operate the machine. The first person stood behind the machine to untangle the telephone wire if it became tangled up and to guide the wire evenly on the spool. The second person stood by the control levers to stop the spool from revolving if the wire became entangled or other trouble developed.

On the date of the accident, Elliott Wimer, an Aerial Foreman, directed Schlenk and David Shaw, a co-worker, to complete the wire retrieval operations in the Watford City area while Wimer and other crew members left for Williston to begin work on another job. Later, Schlenk told Shaw to go to Watford City to fill up one of the two remaining vehicles with gasoline. Schlenk then began retrieving the remaining wire by himself, as, he testified in his deposition, he had been doing the entire morning. Schlenk attached the wires to the spool and set the speed of the machine "all the way up". Schlenk proceeded to position himself in front of the turning spool to guide the wires. He became entangled in the ma-

chine and was pulled onto the spool where Shaw found him seriously injured when he returned.

We agree with Bell's contention that operation of the wire winder machine does not carry a largely intrinsic risk or danger *when used in an ordinary and reasonable manner.* We might well agree with Schlenk's argument that operation of the wire winder by one person presents a peculiar risk or is inherently dangerous if operation by one person was the "ordinary and reasonable manner" of doing the work. However, the evidence reveals that the risk to Schlenk was not inherent in or peculiar to the typical operation of the wire winder, but arose "out of the failure to use proper protective practices", namely, the second workman whose duty it was to control the machine. *Peterson v. City of Golden Valley, supra* 308 N.W.2d at 554. Although Schlenk argues that he operated the wire winder by himself approximately fifty percent of the time and that this was the usual practice of Aerial Contractors, a deposition taken in 1977 reveals the following exchange between Schlenk and counsel for Aerial Contractors:

"Q    Had you ever heard of anyone else being injured before your accident?

"A    Never.    Not injured, but caught on there.

"Q    Okay.    But from the crew and from anybody that worked with Aerial Contractors, you heard of nobody else being injured?

"A    Never.    *They always had somebody there to stop the machine.*"    [Emphasis added.]

We believe operation of the wire winder machine, when used when standard precautions are taken, presents no extraordinary risk of injury and, therefore, Bell owed no duty to Schlenk under the inherent danger or peculiar risk exceptions to the employer nonliability rule.[4]

---

4.    Our determination that Bell owed no duty to Schlenk under the inherent danger exception of § 427 and the peculiar risk exception of § 416 is also dispositive of Schlenk's claim that Bell

should be held liable under § 413 of the Restatement.    Section 413 states:

"*§ 413.    Duty to Provide for Taking of Precautions Against Dangers Involved in Work*

## II

## VICARIOUS LIABILITY BASED UPON VIOLATION OF ADMINISTRATIVE REGULATION

Schlenk also argues that § 424 of the Restatement (Second) of Torts (1965) imposed upon Bell a nondelegable duty to ensure that the wire-winding activities were performed in a safe manner. Section 424 provides:

"§ 424. *Precautions Required by Statute or Regulation* One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions."

Comment a to § 424 of the Restatement states that "whenever a statute or an administrative regulation imposes a duty upon one doing particular work to provide safeguards or precautions for the safety of others ... the employer cannot delegate his duty to provide such safeguards or precautions to an independent contractor."

The "statute" or "administrative regulation" which Schlenk argues imposes this nondelegable duty is found in § 432(C)(4) of

Entrusted to Contractor One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
  (a) fails to provide in the contract that the contractor shall take such precautions, or
  (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.
Section 413 is a theory of personal rather than vicarious liability which imposes liability upon the employer for failure to act in a reasonable manner in providing for precautions to be taken in work that involves a peculiar unreasonable risk of physical harm to others. *Moloso v. State,* 644 P.2d 205, 215 (Alaska 1982). Although the risks described in §§ 413 and 416 are worded differently [compare "peculiar unreasonable risk of physical harm to others"

the National Electrical Safety Code (1973 ed., 2d printing 1974), of the American National Standards Institute, Inc., which provides as follows:

"*C. Installing and Removing Wires or Cables*

. . . . .

4. Employees should avoid contact with moving winch lines, especially near sheaves, blocks, and take-up drums."

█ Assuming, *arguendo,* that this provision of the National Electrical Safety Code rises to the status of a "statute" or an "administrative regulation", as contemplated by § 424 of the Restatement, we agree with the district court's conclusion that the language of § 432(C)(4) of the National Electrical Safety Code is advisory rather than mandatory in nature and imposes no duty on Bell, but, rather, on Schlenk himself. Thus, we conclude that Bell did not owe a nondelegable duty to Schlenk under § 424 of the Restatement.

## III

## DIRECT LIABILITY BASED UPON NEGLIGENT EXERCISE OF RETAINED CONTROL

Schlenk further argues that Bell negligently exercised the control it retained over

with "peculiar risk of physical harm to others"], we believe these sections may be construed together. *See Giarratano v. Weitz Company,* 259 Iowa 1292, 147 N.W.2d 824, 834 (1967). Further support for this conclusion is found in Comment a to § 413 which indicates that § 413 is applicable only to situations where the employer has failed to provide in the contract that the contractor shall take the required precautions, while § 416 is applicable to situations in which the employer does so provide.
  Because we hold that operation of the wire winder presented no extraordinary risk of injury so as to bring the activity within §§ 413, 416, and 427, we need not determine whether or not paragraph 15 of the contract which states that "All work is to be done wholly at the risk of the Contractor, and during its progress the Contractor shall take all precautions for its proper and safe performance" was sufficient to relieve Bell of possible liability under § 413(a).

the Aerial Contractors' telephone line dismantling project.[5] Our court has recognized the well-known exception to the non-liability rule that an employer is liable for an independent contractor's acts on a job over which it has retained control. *See Peterson v. City of Golden Valley, supra* 308 N.W.2d at 554–555. Section 414 of the Restatement (Second) of Torts (1965) states:

> "§ 414. *Negligence in Exercising Control Retained by Employer* One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reàsonable care."

The applicability of § 414 is again a question of duty, and thus of law. *Peterson v. City of Golden Valley, supra* 308 N.W.2d at 554.

All crew members and the equipment used on the Watford City project were supplied by Aerial Contractors. Bell did not provide Aerial with any written instructions or specifications relating to the details of how the telephone line dismantling was to be performed. It is also undisputed that no Bell employees were ever present at the job site while the work was in progress.[6] Thus, it is evident that Bell exercised no actual control of the work involved in the instant case. Schlenk argues, however, that the fact that Bell did nothing nor had any representative at the job site is immaterial because Bell nevertheless retained the right to control the performance of the work.

*See* Restatement (Second) of Torts § 414, Comment a (1965), *cf. La Bree v. Dakota Tractor & Equipment Co.,* 69 N.D. 561, 288 N.W. 476, 481 (1939). To make this determination necessitates an examination of the contract between Bell and Aerial Contractors.

Under the contract, Bell reserved the right to designate the order in which the work was to be performed; to specify the quality of the materials furnished by the contractor; to make additions, subtractions, or other changes regarding the work; to prohibit use of equipment which might interfere with telephone service; to inspect work and materials furnished by the contractor; and the right to condemn, reject, or take over the work if the contractor failed to conform to the terms of the contract. In addition, paragraph 37 of the contract provides:

> "The relationship of the Contractor with the Company hereunder shall be that of an independent contractor. The Contractor shall have full control and direction over the mode and manner of doing the work and of his personnel employed on or about the work."

■ An employer who does not retain or actually exercise any control or supervision over a project or the employees of an independent contractor, but, instead, is concerned primarily only with the finished product should not be held liable for the negligence of the independent contractor or its employees. *Lumpkin v. Streifel,* 308 N.W.2d 878, 883 (N.D.1981). Comment c to § 414 of the Restatement (Second) of Torts (1965) expands upon this principle:

> 'collateral' or 'casual' negligence in the operative details of the work, which he could not reasonably contemplate as likely to occur". Prosser, Law of Torts § 57, at p. 356 (4th ed. 1971); *cf., Fettig v. Whitman,* 285 N.W.2d 517, 522 (N.D.1979).

5. In a related contention, Schlenk relies upon *O'Leary v. Coenen,* 251 N.W.2d 746, 752 (N.D. 1977), for the proposition that because Bell had an easement or right-of-way for the line being dismantled by Aerial, Bell, as an occupier of land, owed him a duty to ensure that the activities it conducted on any right-of-way it possessed were performed with reasonable care, and that whether or not the activities involved were dangerous is of little significance in itself. Even assuming Schlenk's reliance upon *O'Leary, supra,* to be sound in the context of the instant case, Professor Prosser noted that a possessor of land nevertheless "is not liable for

6. Even if Bell employees had been present on occasion at the job site, presence alone is insufficient to establish actual control over the *manner and details* of the work. *Peterson v. City of Golden Valley,* 308 N.W.2d 550, 555 (N.D. 1981).

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

The rights reserved to Bell under the provisions of the contract in the instant case did not give Bell any control or right to control the method or manner of performing the details of the work, but, rather, generally related to Bell's right to make certain that the results obtained conformed to the specifications and requirements of the contract. We believe the mere retention of supervisory controls of this nature is not sufficient to impose liability upon Bell. *See German v. Mountain States Telephone & Tel. Co.,* 11 Ariz.App. 91, 462 P.2d 108, 111–112 (1969). Because these provisions of the contract did not shift control over the method of work to Bell, but were simply meant to guarantee that the final results were in accord with Bell's plans, and because Bell exercised no actual control over the details of performing the work, § 414 of the Restatement is inapplicable in the instant case. *See Peterson v. City of Golden Valley, supra* 308 N.W.2d at 555.

## IV

## DIRECT LIABILITY BASED UPON NEGLIGENT SELECTION OF CONTRACTOR

Schlenk's final contention for holding Bell liable for his injuries is that Bell failed to exercise reasonable care in the selection of Aerial Contractors as its independent contractor to perform the line dismantling work. This exception to the general rule of employer nonliability is found in § 411 of the Restatement (Second) of Torts (1965):

"*§ 411. Negligence in Selection of Contractor* An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

(b) to perform any duty which the employer owes to third persons."

Under this exception, Schlenk relies upon *Western Stock Center, Inc. v. Sevit, Inc.,* 195 Colo. 372, 578 P.2d 1045 (1978) for the proposition that Bell had an absolute duty to make a specific inquiry regarding the work and safety practices of Aerial Contractors. Bell, in this case, made no such inquiry. It appears, however, that the court, in *Sevit, supra,* required such a duty only when the activity involved is potentially dangerous, presumably in reference to § 411(a) of the Restatement. We agree with the district court's rationale that, under § 411(a) of the Restatement, operation of the wire winder constituted work which "lies within the competence of the average man" rather than "work which can be properly done only by persons possessing special skill and training". Restatement (Second) of Torts § 411, Comment c (1965). *See also* Annot., 78 A.L.R.3d 910, 917 (1977). The work in the present case involved a risk of physical harm *only* if the work was *not properly* performed. Proper use of the wire winder, which required that two persons operate it, did not pose an unreasonable risk of physical harm which is not inherent to some degree in any employment task undertaken. Imposing upon an employer an absolute duty to make a specific inquiry as to the work and safety practices of an independent contractor in all cases would run contra to the principle enunciated in *Fettig v. Whitman,* 285 N.W.2d 517, 523 (N.D. 1979), that "in the performance of the operative details of a project . . . the employer

has the right to rely on the presumption that the contractor will perform his work in a manner as to discharge his legal duties owing to his employers and third persons".

Even if our interpretation of the *Sevit* case were incorrect, we believe the better rule to be that in order to render an employer liable under the theory of negligent selection of an independent contractor in cases such as the one at bar, it is necessary to establish that, at the time of hiring, the employer had either actual or constructive knowledge that the independent contractor was incompetent. *L.B. Foster Company v. Hurnblad*, 418 F.2d 727, 730 (9th Cir.1969); *Mooney v. Stainless, Inc.*, 338 F.2d 127, 131 (6th Cir.1964), *cert. denied*, 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684 (1965). In addition, the mere fact that an independent contractor might subsequently engage in a negligent act raises no presumption that the employer was negligent in selecting the independent contractor for the job. *Mooney, supra.*

We agree with the district court that a review of the depositions and affidavits in this case reveals that there is absolutely no evidence establishing that Bell failed to exercise reasonable care in hiring a competent and careful contractor.

Aerial is a contracting firm which specialized in line wrecking work, and had a good reputation for doing so. At the time of the accident to Schlenk, it was the largest construction company specializing in that kind of work in North Dakota. Aerial had been performing work for Bell for more than five years and had removed an estimated 28,000 to 30,000 miles of abandoned telephone wires between 1969 and 1974. It owned all of the equipment necessary to perform the job and it employed experienced crews and supervisors. No individual other than Schlenk had ever been seriously injured while operating any of Aerial's wire-winding machines. At all relevant times Aerial completed its line-wrecking work to Bell's satisfaction.

In view of these undisputed facts, we conclude that, as a matter of law, Bell did not negligently select an incompetent contractor and, thus, § 411 of the Restatement (Second) of Torts (1965) is inapplicable in the instant case.

For the reasons stated in the opinion, the summary judgment is affirmed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.