# United States Court of Appeals
## For the Eighth Circuit
No. 18-3244

Nicholas Meyer

*Plaintiff - Appellee*

v.

McKenzie Electric Cooperative, Inc.,

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northwestern District of North Dakota

_____

Submitted: November 12, 2019
Filed: January 17, 2020

_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Nicholas Meyer, an employee of 4T Construction (4T), sued McKenzie Electric Cooperative, Inc. (McKenzie) under both negligence-based and strict liability law principles after he was seriously injured while replacing a high voltage transmission line for the Bear Ben Road Reconductor Project (Project). The district court[1] granted

_____

[1]The Honorable Daniel L. Hovland, then Chief Judge of the United States District Court for the District of North Dakota.

summary judgment in favor of McKenzie, holding that McKenzie was not liable because 4T was an independent contractor and because North Dakota has not recognized the maintenance of high-voltage power lines as an ultra hazardous activity. We affirm.

McKenzie hired 4T in March 2014 to install, replace, and repair high voltage transmission lines for the Project, which involved three energized phase conductors and one neutral conductor. The contract between McKenzie and 4T stated that 4T is "an independent contractor performing its work to the requirements as set out by [McKenzie] but without supervision of [McKenzie] or its employees, [4T] agrees to hold harmless, indemnify, and defend [McKenzie]."

In assigning work to 4T, McKenzie followed its practice of issuing work orders, which identified the work that the contractor was hired to perform, and "staking sheets," which indicated where the work was to be performed and what electrical equipment was already installed. The work order and staking sheets for the Project explained that the four conductors were sized at 1/0. The three energized phase conductors were to be upsized to 4/0, while the neutral conductor was to remain at 1/0. Steve Lautenschlager, McKenzie's contractor manager and journeyman lineman, made periodic inspections to the Project site. 4T's president, John Gulley, testified that McKenzie was concerned with the finished product, but that it neither directed nor instructed 4T on how to complete the Project. 4T's vice president, Lance Wood, testified that McKenzie did not supervise or give input to 4T beyond scheduling work start and completion dates. Jared DeHaven, the journeyman lineman and 4T's crew foreman on site the day of Meyer's accident testified that while 4T updated McKenzie on work progress, McKenzie did not oversee 4T's work or safety program. McKenzie's CEO, John Skurupey, testified that McKenzie did not supervise, monitor, or inspect 4T's work and that it was concerned only with the finished product. Meyer himself, who was working as an apprentice lineman on the

Project, testified that he had never met any representative from McKenzie during the entire time that he was employed by 4T.

While working on the Project, the 4T crew realized that the neutral conductor was not sized properly and had to be replaced. The crew, including Meyer, discussed procedures for safely installing a new neutral conductor given that one of the overhead conductors was energized at the time. Meyer climbed a pole to change out a neutral wire and suffered an electric shock, resulting in serious burns to his hands, forearms, and right leg, as well as brain damage. He subsequently underwent the amputation of his left hand and has experienced chronic pain and permanent disfigurement.

We review *de novo* the district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. Bishop v. Glazier, 723 F.3d 957, 960-61 (8th Cir. 2013). Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The parties agree that North Dakota law governs this diversity action, and we are thus bound by the decisions of the North Dakota Supreme Court. See Captiva Lake Invs., LLC v. Fidelity Nat'l Title Ins. Co., 883 F.3d 1038, 1046 (8th Cir. 2018) (applying state law in a diversity action). If the state supreme court has not decided the issue, our role is to predict how that court would rule. Id.

Meyer argues that McKenzie owed him a duty of reasonable care and negligently caused his injuries. Meyer first contends that the contract between 4T and McKenzie was ambiguous and incomplete. He argues that the parties "entered into the Contract without any sincere intent to review, understand, negotiate, and/or actually abide by its terms." R. Doc. 50, at 5 (quoting R. Doc. 40, at 6). "[T]he language of a contract governs its interpretation if the language is clear and explicit

-3-

and does not involve an absurdity." Rogstad v. Dakota Gasification Co., 623 N.W.2d 382, 386 (N.D. 2001) (citing N.D. Cent. Code. § 9–07–02). The contract states that 4T is an "independent contractor" that performs its work "without supervision" by McKenzie, which we conclude constitutes a clear and unambiguous statement that 4T was retained as an independent contractor.

Meyer next argues that McKenzie is liable for his injuries because it retained actual control over 4T's work. The North Dakota Supreme Court "has recognized the general rule that an employer is not liable for acts or omissions of its independent contractor." Schlenk v. Nw. Bell Tel. Co., Inc., 329 N.W.2d 605, 608 (N.D. 1983). It has also recognized the exception to the general rule that "an employer is liable for an independent contractor's acts on a job over which it has retained control." Id. at 612. That is, an employer "who entrusts work to an independent contractor, but who retains the control of any part of the work." Id. (quoting Restatement (Second) of Torts § 414). An employer does not retain control over a project when it "is concerned primarily only with the finished product." Id. (citing Lumpkin v. Streifel, 308 N.W.2d 878, 883 (N.D.1981)). The employer is liable for the actions of the independent contractor "only when the employer retains the right to control the method, manner, and operative detail of the work." Iverson v. Bronco Drilling Co., 667 F. Supp. 2d 1089, 1094-95 (D. N.D. 2009). The North Dakota Supreme Court has explained that

> [I]t is not enough for an employer to retain a general right to inspect the work progress or receive reports, to make suggestions or recommendations, or to prescribe alterations or deviations because those general rights are usually reserved to employers of independent contractors. Instead, the employer must retain a right of supervision so the independent contractor is not entirely free to do the work in its own way.

Pechtl v. Conoco, Inc., 567 N.W.2d 813, 817 (N.D. 1997).

We conclude that McKenzie did not retain control over 4T's and Meyer's actions. The statements of those with leadership positions within 4T and McKenzie make clear that McKenzie was concerned only with the final product. Moreover, the staking sheets and work orders set forth only the location and final outcome of 4T's work, rather than prescribing the specific method in which the work was to be done or further details regarding the manner. Finally, even though Lautenschlager performed periodic inspections, North Dakota law states that inspecting work does not create enough supervision to manifest actual control. See id. at 817.

Leaving aside McKenzie's argument that Meyer failed to preserve the claim on appeal, Meyer also contends that McKenzie is strictly liable for his injuries, as he was engaged in an ultra hazardous activity. The North Dakota Supreme Court has declined to hold a utility company strictly liable for "injuries and damages from contact with high tension power lines." Wirth v. Mayrath Indus., Inc., 278 N.W.2d 789, 791 (N.D. 1979). In rejecting the plaintiff's argument for imposing strict liability for abnormally dangerous activities as set forth in the Restatement (Second) of Torts §§ 519 and 520, the Wirth court concluded that the Restatement provisions were inapplicable because electrical power is necessary and important and does not present an "abnormal danger[]." Id. at 794. Meyer argues that Wirth is distinguishable because his case involved the replacement of transmission lines energized with high-voltage electricity, rather than the mere transmission of high-voltage electricity as was the case in Wirth. Both maintenance and ownership of power lines were addressed in Wirth, id. at 791-92, and so we see no reason to read its holding as inapplicable to the facts of this case.

The judgment is affirmed.

_____