[No. 10793.   *En Banc.*   November 5, 1913.]

## N. P. SIMON, *Appellant*, v. HAMILTON LOGGING COMPANY et al., *Respondents.*[1]

MASTER AND SERVANT—INJURIES TO SERVANT—MEDICAL ATTENDANCE. An employer furnishing medical attendance without profit to itself, is liable for the consequence of unskillful treatment only in case of failure to exercise reasonable care in the selection of a competent surgeon.

SAME—EMPLOYMENT OF SURGEON—NOTICE OF INCOMPETENCY—EVIDENCE. In an action against an employer for negligence in employing an incompetent surgeon to treat employees, evidence of alleged malpractice by the physician, occurring six years before he was engaged by the defendant, is inadmissible as too remote to show notice of his incompetency.

SAME—EVIDENCE OF INCOMPETENCY—REPUTATION—NOTICE. In such a case, evidence of specific acts of alleged malpractice, occurring after the case at bar arose, or the surgeon's reputation at the time of the trial, is inadmissible to establish the defendant's negligence in employing or retaining him.

SAME. In such a case, nonexpert evidence of two alleged cases of incompetency as an obstetrician, not brought home to the defendant by any kind of notice, is inadmissible to prove the defendant's negligence in employing a surgeon to treat men employed in a logging camp.

Appeal from a judgment of the superior court for Snohomish county, Yakey, J., entered June 8, 1912, dismissing an action for malpractice, after a trial on the merits before the court and a jury. Affirmed.

*Willett & Oleson*, for appellant.

*Cooley & Horan* and *R. Mulvihill*, for respondent.

CHADWICK, J.—In April, 1909, defendant Hamilton Logging Company employed Dr. R. G. Kellner to treat and care for such of its employees as might become sick or injured while in its employ. One dollar a month was deducted from the wages of each employee, and the whole sum so deducted

[1]Reported in 136 Pac. 361.

was paid over to Dr. Kellner in pursuance of a contract, the material parts of which are as follows:

"In consideration of the sum of one dollar ($1) lawful money of the United States, for each and every individual employed by the party of the second part, for a period of not less than one week nor more than one month, and ten cents daily for less than one working week, said party of the first part agrees to take care of, treat and use such professional knowledge and skill as he is capable of in all cases of sickness and accident, of said employes of the party of the second part.

"Conditions:

"(1)   Minor trivial accidents and ailments to be treated, but not to include bed and board. . . .

"(3)   Contagious diseases while calling for treatment not to be admitted to the hospital. . . ."

Plaintiff was employed by defendant logging company as a fireman, and had worked during the months of October, November and December, 1910. On December 14th, plaintiff's right great toe became sore and painful. On the 17th, the pain had become so intense that he was compelled to quit work. He informed the foreman of his affliction, and was told to go to Dr. Kellner, at Hamilton, for treatment, and on the morning of the 18th, plaintiff walked to the hospital. Dr. Kellner then examined the plaintiff's toe, saying to the plaintiff, "that is a bad toe; a bad callous there." He then gave plaintiff a prescription with directions for its application. After obtaining the medicine prescribed, plaintiff returned to his cabin at the logging camp. Dr. Kellner did not then offer to take plaintiff into his hospital for treatment, although it is apparent from the record before us that plaintiff's condition must have been serious and that he was suffering intense pain. Plaintiff applied the remedy prescribed during the following two or three days, but without relief. The infection, as it proved to be, began to spread over the foot, causing it to swell. About the 20th of December, Dr. Kellner came to the camp but did not see the plaintiff. On the 21st, plaintiff asked the bookkeeper of the company to call

the doctor by 'phone.  This was done, but the doctor did not come until the afternoon.  He again examined plaintiff's foot, but did nothing, saying to plaintiff, "keep on with the salve." No suggestion that plaintiff be taken to the hospital for treatment was made by the doctor, although plaintiff himself was so impressed with the seriousness of his condition that he asked the doctor to amputate the toe.  On December 23d, the camp was closed for the holidays and all of the employees paid off, including the plaintiff, the one dollar being deducted from their wages and the aggregate sum paid to Dr. Kellner. On the evening of the 22d, plaintiff asked the company for a card that would admit him to the Sedro-Woolley hospital. This was refused, and plaintiff was told to go to the Hamilton hospital (Dr. Kellner's place) and stay there.  Plaintiff then went by train to Sedro-Woolley, being supported and assisted on the trip by some of his fellow employees.  On December 27th, his toe was amputated.  On January 12th following, a portion of his foot was amputated, and on March 1st, his foot was amputated at the ankle.  These successive amputations were necessary to arrest the spreading infection.  Inasmuch as the remaining facts weave themselves into our discussion of the law of the case, we will make no mention of them at this time.

Plaintiff began this action to recover damages against the doctor on the ground of general negligence and unskillful diagnosis and treatment, and against the logging company upon two grounds: first, that the company is liable in any event for the negligence of its agent; and second, that it is liable for negligence in the employment of, and retaining in its employ, an unskillful and incompetent physician and surgeon.  Upon the trial, plaintiff having rested, the court entertained a motion to dismiss the case on account of the insufficiency of the evidence.  The motion was sustained as to the logging company, but denied as to defendant Kellner. Whereupon it was agreed by counsel that a like order of dismissal should be entered in favor of Kellner, with the under-

standing that any disposition of the case which might be made by this court upon appeal as to the logging company, should also apply as to him. From a judgment of dismissal, plaintiff has appealed.

Upon the record before us, there can be no question as to the right of the appellant to have the question of Dr. Kellner's negligence submitted to a jury, and we shall not discuss his acts of omission except in so far as it may be necessary in our examination of the logging company's case.

This court has held that a company employing a surgeon for the benefit of its men and without profit to itself, is not liable in any event, but that the measure of its duty is to exercise reasonable care in the selection of a competent surgeon. *Wells v. Ferry-Baker Lumber Co.*, 57 Wash. 658, 107 Pac. 869, 29 L. R. A. (N. S.) 426; *Wharton v. Warner*, 75 Wash. 470, 135 Pac. 235. Although we are invited to review and distinguish our own cases and to declare the contrary rule, we think the one announced is supported by reason as well as the better authority, and have determined to adhere to it without reopening the discussion.

Appellant sought to show that Dr. Kellner was incompetent and unskillful. He first offered to show an instance of alleged malpractice occurring in the year 1904, some six years before the contract of employment was entered into. This was clearly too remote and was properly rejected by the court. Appellant then offered to prove by several witnesses specific acts of alleged malpractice occurring after this case arose, and that they were matters "of common knowledge in and about Hamilton, Washington." While incompetency cannot, as a rule, be shown by proof of a single act of negligence, it is proper to show repeated acts of carelessness and incompetency on the part of a fellow servant—we understand that the logging company's liability is to be tested by the same rule—as touching the question whether the employer knew or might have known that the servant was incompetent if he had exercised ordinary care in his selection

or retention. *Green v. Western American Co.*, 30 Wash. 87, 70 Pac. 310; *Long v. McCabe & Hamilton*, 52 Wash. 422, 100 Pac. 1016; *Hage v. Leudinghaus*, 60 Wash. 680, 111 Pac. 1041; 1 Labatt, Master and Servant (1st ed.), § 189; Bailey, Master's Liability, etc., p. 55; *Conover v. Neher-Ross Co.*, 38 Wash. 172, 80 Pac. 281, 107 Am. St. 841; *Dossett v. St. Paul & Tacoma Lum. Co.*, 40 Wash. 276, 82 Pac. 273.

What Dr. Kellner may have done or omitted to do after he ceased to treat appellant could not be held to bind the logging company, even though knowledge had been brought home to it, for the very act charged may have been the culminating circumstance that made his acts subject to the common knowledge of men in and about Hamilton. The company's liability must rest upon a want of due care in the selection of the surgeon, or in its negligence in retaining him at the time appellant was treated. This argument applies, also, to an offer to prove that, at the time of the trial, Dr. Kellner's reputation was that of an unskillful and incompetent person. It must be remembered that the evidence of reputation of Dr. Kellner as to competency, in so far as it is admissible here, is not for the purpose of proving the negligence of Dr. Kellner at the time of his treating of appellant, but is for the purpose of proving the negligence of the logging company in employing Dr. Kellner after knowledge thereof on the part of the logging company. What Dr. Kellner may have done after ceasing to treat appellant, clearly has nothing to do with influencing the logging company, one way or the other, in employing or continuing the employment of Dr. Kellner up to the time he treated appellant. Indeed, the very acts of negligence on the part of Dr. Kellner, claimed by appellant to have caused his injuries, would have weight in the public mind in determining Dr. Kellner's reputation to the prejudice of the logging company; yet manifestly, his reputation should not be measured by those acts as against the logging company. Its negligence, if any, occurred prior to that time. Specific acts of negligence brought home to a

defendant, and reputation, are evidence of the same quality, and the employer cannot be bound unless there is knowledge, express or implied, at a time, when, if acted upon, he could have refused to employ, or, having him employed, discharge the employee so as to prevent the injury.

Appellant offered to prove by one witness, and by her husband, that the doctor had treated her unskillfully in a confinement case, occurring in August, 1910. Another offer was made to prove by a husband that his wife had been negligently treated in a confinement case in April, 1910. No expert testimony was offered; merely the opinion of nonprofessional witnesses. Nor did appellant offer to prove, except inferentially, that these cases were matters of common knowledge. Appellant offered no facts from which it might be inferred that the logging company, operating two miles away, had or might have had knowledge of these cases, if indeed incompetency as an obstetrician would in any event be held to imply incompetency in the treatment of men employed in a logging camp.

Finding no error, the judgment is affirmed.

CROW, C. J., GOSE, MAIN, ELLIS, MORRIS, FULLERTON, and MOUNT, JJ., concur.