L. B. FOSTER COMPANY, Inc.,
Appellant,

v.

Melvin R. HURNBLAD and Grace M.
Hurnblad, husband and wife,
Appellees.

No. 22597.

United States Court of Appeals
Ninth Circuit.

Nov. 18, 1969.

Rehearing Denied Dec. 15, 1969.

Roy C. Moceri (argued) of Reed, Mc-Clure & Moceri, Seattle, Wash., for appellant.

Robert A. Comfort (argued) and Gerald Lee Hulscher (argued) of Comfort, Dolack, Hansler & Billett, Tacoma, Wash., for appellees.

Before HAMLEY and BROWNING, Circuit Judges and McNICHOLS, District Judge.*

HAMLEY, Circuit Judge:

This is a diversity suit for damages resulting from an automobile accident which occurred at Tacoma, Washington. The plaintiffs are Melvin R. Hurnblad and his wife, Grace M. Hurnblad. They were injured and their automobile was damaged on December 9, 1963, when the car was struck at a Tacoma intersection by a combination tractor-trailer loaded with steel rails and splicing.

Plaintiffs named, as defendants, Sim Knight, who drove the tractor-trailer, L. B. McGowan who, with Knight, owned the tractor-trailer, Transport Supply Company (Transport Supply), which arranged to have Knight haul the steel, L. B. Foster Company, Inc. (Foster), which had sold the steel and had contracted with Transport Supply to have it hauled, and several others.

After a jury verdict for plaintiffs, the trial court entered judgment against the named defendants.[1] Foster alone appeals.

Foster is a steel warehousing and fabricating company with its headquarters in Pittsburgh, Pennsylvania, and a district office in San Francisco, California. The company maintains a storage yard at San Leandro in space leased from Bigge Drayage Company. In late November Foster sold the steel in question, which weighed more than forty thousand pounds, to Traylor-Pamco of Bellevue, Washington, under a contract which required Foster to arrange for the transportation and to prepay the freight.

Mitchell Brothers Trucking Company, the certificated interstate trucker which Foster ordinarily used for similar hauls, was not then available. About this time Foster received a telephone call from Transport Supply soliciting trucking hauls. Transport Supply had, on two previous occasions, arranged for transportation of steel for Foster. Foster contracted with Transport Supply to pick up the steel at the San Leandro yard and to deliver it in Bellevue.

In fulfillment of this contract, Transport Supply contracted with Sim Knight to transport the steel. The only contact Transport Supply had had with Knight prior to the haul in question was in early December, 1963, when Transport Supply had arranged to have Knight haul a load of shakes from Portland, Oregon to Sacramento, California.

Neither Knight, McGowan nor Transport Supply had authority from the Interstate Commerce Commission (Commission) to transport freight by truck in interstate commerce. While the lawful rate for such a shipment was at least one dollar per hundredweight, Transport Supply charged Foster only seventy-five cents per hundredweight.

Knight, driving the tractor-trailer picked up the steel at San Leandro, and left for Bellevue. While coming down a hill in Tacoma, the brakes on the tractor-trailer failed and it collided with the Hurnblad car. Knight and McGowan had purchased the tractor-trailer, consisting of a 1945 Pointer Willamette modified forty-foot trailer and a 1945

---

1. Except Transport Supply, which defaulted prior to the trial.

Peterbilt tractor, about three months previously to haul hay and other goods in Oregon.

Plaintiffs alleged and sought to prove that Foster committed three acts of negligence and that each was a proximate cause of the accident: (1) selecting Transport Supply, alleged to be an incompetent and careless contractor, to haul or arrange for the hauling of the steel from San Leandro to Bellevue; (2) violating section 222(c) of the Interstate Commerce Act (Act), 49 U.S.C. § 322(c) relating to rate rebates and discrimination by contracting with Transport Supply at less than the authorized rates, and (3) loading the steel cargo on the tractor-trailer.

The jury specially found that Foster had been negligent in selecting Transport Supply and in violating the statute and that each such act of negligence was a proximate cause of the accident. The jury also specially found that Foster was not negligent in the third respect, loading the cargo. Consistent with its prior motion for a directed verdict made at the close of the evidence, Foster moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. The motion was denied.

On this appeal, Foster first argues that the trial court erred in denying these motions because, as a matter of law, there is no basis for holding it liable. Foster asserts that since the negligent driver, Knight, was not the employee of Transport Supply but was an independent contractor selected by that company to haul the goods, Knight's negligence in operating the truck cannot be imputed to Transport Supply and certainly cannot be imputed to Foster. Foster cites DeMichiel v. General Crushed Stone Co., 218 F.2d 186 (3d Cir. 1954) in support of this contention.

This line of argument misconstrues the nature of plaintiffs' cause of action. In *DeMichiel* the plaintiff sought to hold an alleged principal vicariously liable under the doctrine of *respondeat superior*. Since the driver whose negligence caused the accident was found not to be the employee of that defendant, the Third Circuit correctly held that plaintiff could not recover against the latter.

In the case now before us, the Hurnblads did not seek to recover from Foster on the basis of *respondeat superior*. As correctly set forth in the instructions, they sought recovery against Foster on the theory that Foster's negligent selection of an incompetent independent contractor to do work which involves a risk of physical harm to others unless skillfully and carefully done was a proximate cause of the accident.[2] If this theory is supported by the evidence, Foster would be liable regardless of Knight's status as an employee of Transport Supply or as an independent contractor.

Foster next argues, in effect, that the trial court erred in denying its motions for a directed verdict, judgment notwithstanding the verdict, and a new trial, made on the ground that, considered in the framework of the applicable law, the evidence does not warrant the jury finding that Foster negli-

---

2. Foster's only objection to this instruction was that plaintiffs failed to produce substantial evidence to support a finding of negligence or of proximate cause. It follows that the legal principles set forth in the instruction became the law of the case, and they are not questioned here by Foster. In any event, the instruction correctly stated Washington law, Simon v. Hamilton Logging Co., 76 Wash. 370, 136 P. 361 (1913), which follows the general rule. See Mooney v. Stainless, Inc., 338 F.2d 127 (6th Cir. 1964); W. Prosser, Law of Torts, § 70, at 481 (3d Ed. 1964); II F. Harper and F. James, The Law of Torts, § 26.11, at 1405 (1956); Restatement (Second) of Torts, § 411 at 376 (1965), which reads in part as follows:

**"Negligence in Selection of Contractor**
**"An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor**

**"(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done. \* \* \* \*"**

gently selected an incompetent and careless contractor (Transport Supply) to transport the steel. Under the applicable law, Foster cannot be held liable under this theory unless, at the time of the contract, (1) Transport Supply lacked competence in providing reasonably safe highway equipment, and (2) Foster knew, or in the exercise of reasonable care should have known, of this deficiency. See Simon v. Hamilton Logging Co., 76 Wash. 370, 136 P. 361, 362 (1913).

We first consider the sufficiency of the evidence to warrant a jury finding that, when Foster contracted with Transport Supply to haul the steel from San Leandro to Bellevue, the latter lacked competence in providing reasonably safe highway equipment. In so doing we keep in mind that plaintiffs are entitled to all reasonable inferences that may be drawn from the evidence, since the jury verdict was in their favor. Standard Oil Company of California v. Moore, 251 F.2d 188, 198 (9th Cir. 1957).

The evidence shows, at most, one prior act of negligence by Transport Supply. We refer to Transport Supply's prior engagement of Knight to transport a load of shakes from Portland to Sacramento without first ascertaining whether he had safe equipment. But aside from plaintiffs' failure to show that Foster knew or should have known of this incident, such an act of negligence, standing alone, would not establish the incompetence of Transport Supply in the sense contemplated by the rule under discussion. Several acts of antecedent negligence may be enough to warrant a finding of incompetence,[3] but a single act of antecedent negligence would not warrant such a finding.[4]

In our view, however, proof of prior acts of negligence is not the only way in which incompetence and carelessness in supplying safe equipment for highway trucking can be established. A carrier's or transportation broker's lack of experience, poor financial condition, failure to respect federal certificate requirements, and willingness to do business at cut rates may be such that, apart from prior acts of negligence, the finder-of-fact may reasonably infer that the carrier or broker could not provide safe equipment.

In the present case we hold that plaintiffs have made a substantial showing that Transport Supply was such a fly-by-night operation that the jury could reasonably conclude that it lacked competence in producing safe equipment. Plaintiffs introduced substantial evidence tending to show that: (1) Transport Supply had only been in existence for six months prior to the time Foster contracted with it to haul the steel; (2) the company had only a telephone number and a post office box; (3) several witnesses familiar with trucking in the area had never heard of it; (4) the company offered to haul interstate but did not have a Commission certificate authorizing it to do so; (5) the company had engaged in illegal rate cutting in prior hauls for Foster; and (6) in general, unlicensed carriers haul at reduced rates, and as a result do not have well-maintained highway equipment and experienced drivers, and often go out of business as the result of an accident.

This brings us to the question whether the evidence warranted the jury's finding that at the time of the contract with Transport Supply for the hauling of the steel, Foster knew, or in the exercise of reasonable care, should have known, of Transport Supply's incompetence.

In our opinion, there was no substantial evidence that Foster had actual knowledge of Transport Supply's incompetence. As noted above, Transport Supply had not, prior to the contract, committed a series of negligent acts. Nor is there any basis for a finding that Fos-

3. See Johansen v. Pioneer Mining Co., 77 Wash. 421, 137 P. 1019, 1021 (1914); Green v. Western American Co., 30 Wash. 87, 70 P. 310, 320 (1902).

4. See Simon v. Hamilton Logging Co., 76 Wash. 370, 136 P. 361, 362 (1913); Dossett v. St. Paul & Tacoma Lumber Co., 40 Wash. 276, 82 P. 273, 276 (1905); *Green, supra,* 70 P. at 320.

ter was forewarned of Transport Supply's incompetence due to the latter's poor reputation, since no evidence was received dealing specifically with that issue. It might be added that there is no evidence that Foster knew, at the time of the transaction in question, that Transport Supply was a non-certified, rate-cutting operator.

The question remains, however, whether under the evidence and applicable legal principles the jury was entitled to find, as it in effect did, that in the exercise of reasonable care Foster should have investigated Transport Supply's competence.

Had Foster been a casual shipper of goods or commodities of a weight or character which did not involve any unusual risk to other highway users, it would probably have had no duty to ascertain whether Transport Supply was a certificated operator which utilized safe highway equipment. Under such circumstances, a shipper ordinarily has the right to assume that the carrier is not conducting business in violation of law, and that the carrier utilizes proper equipment. See Moore v. Roberts, 93 S.W.2d 236, 239 (Tex.Civ.App.1936).

But there is substantial evidence that Foster is not such a shipper, and that the cargo in question was of a weight and character which presented an unusual highway hazard. Foster is a nationwide steel warehousing and fabricating company. Its San Francisco office, which arranged the haul here in question, sends out about four hundred interstate and intrastate shipments of steel a month. Approximately seventy to eighty per cent of these shipments are made by truck. The shipment in question consisted of forty thousand pounds and the jury could have found that a shipment of this size calls for special care in the selection of the carrier.

Furthermore, plaintiffs introduced evidence that the Foster employee who arranged for Transport Supply to haul the steel from San Leandro, California to Bellevue, Washington, knew that there were unlicensed, unregulated carriers then operating on the highway. He also knew that the lawful rate for a forty-thousand-pound load was at least one dollar per hundredweight. Yet he did not inquire what rate Transport Supply would charge Foster, nor whether Transport Supply was a licensed carrier. He did not ask Transport Supply where it maintained its base of operations.[5] He did not ask Transport Supply what kind of equipment it would utilize.[6]

In light of Foster's experience in shipping similar loads, of the highway danger posed by the size of this load, and of the knowledge and actions of Foster's employee in contracting with Transport Supply, we conclude that the evidence warranted a jury finding that Foster failed to make a reasonable inquiry as to Transport Supply's competence in supplying safe highway equipment. The applicable legal principle is stated in section 411 of the RESTATEMENT and the other authorities cited in note 2, *supra*. Particularly appropriate is the following *Comment* to section 411:

" * * * if the work is such as will be highly dangerous unless properly done and is of a sort which requires

5. As above noted, Transport Supply did not have an office address but only a telephone number and a post office box.

6. In addition to the evidence that Knight's and McGowan's tractor-trailer was eighteen years old, there was testimony that the equipment appeared to be rundown and that there was a visible splice in the midsection of the trailer. There was also testimony that, at most, the equipment was capable of carrying up to twenty-five thousand pounds of some such commodity as hay, and that no certificated carrier would use it to transport forty thousand pounds of steel. Examination of the equipment after the accident showed that the brakes were so badly worn and out of adjustment that a pencil could be inserted between the linings and drums, with the brakes applied. The wear on the linings was to the rivets, and one wheel had no brake lining. Several of the brake drums were oversized.

**732**

peculiar competence and skill for its successful accomplishment, one who employs a contractor to do such work may well be required to go to considerable pains to investigate the reputation of the contractor and, if the work is peculiarly dangerous unless carefully done, to go further and ascertain the contractor's actual competence." [7]

It follows that the trial court did not err in denying Foster's motions for a directed verdict, judgment notwithstanding the verdict, and a new trial made on the ground that the evidence does not support the jury finding of negligence on the part of Foster in selecting Transport Supply to transport the steel.[8]

In view of this holding it is unnecessary to consider Foster's argument that the trial court erred in rejecting Foster's additional ground for the above-described motions. That ground was that the evidence does not support the jury finding of negligence on the part of Foster in violating section 222(c) of the Act, and the finding that such negligence was a proximate cause of the accident.

We have considered the remaining arguments advanced by Foster why judgment should have been entered for it, or a new trial should have been granted. In our opinion none of these arguments warrant the relief Foster seeks on this appeal, either because the argument is without merit, or because it relates to the section 222(c) phase of the case, or because the asserted error was not prejudicial.

Affirmed.

---

**7.** Restatement (Second) of Torts, comment *c* at 379 (1965). Reliance has been placed on the Restatement as authority in this opinion in the absence of any definitive Washington cases on the amount of care required of someone in Foster's position. However, it should be noted that the *Washington* courts commonly call upon the Restatement in tort cases. See, *e. g.,* Adler v. University Boat Mart, Inc., 63 Wash.2d 334, 387 P.2d 509, 513

(1963); Blancher v. Bank of California, 47 Wash.2d 1, 286 P.2d 92, 95 (1955).

**8.** *Foster does not specifically argue that if it was negligent in selecting Transport Supply, such negligence was not a proximate cause of the accident. In any event, the evidence was sufficient to warrant the jury finding that such negligence by Foster was a proximate cause of the collision.*